IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVON M. IRVINE, | ) | Case No. 5:20-cv-2109 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| MICHAEL PHILLIPS, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION**[1] |

On December 30, 2015, Alexandra Amos visited and spent the evening with brothers Anthony Oliver and Dale Tucker, most of which Amos spent texting on her cellphone.  Amos and Tucker later went to the store.  Upon their return, two men pistol-whipped the brothers, bound them with Amos's assistance, and made off with over $1,000.  As it turned out, Amos had spent the evening conveying to someone over text message the details of the brothers' house and their activities.  Oliver later identified Davon M. Irvine as one of the burglars from several social media pictures.  Irvine, who was on probation and not allowed to leave Ohio, was then arrested in Texas.  Following a jury trial, Irvine was found guilty of two counts of aggravated robbery, one count of aggravated burglary, and two counts kidnapping and sentenced to an aggregate 26-year sentence.

---

[1] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation pursuant to Local Rule 72.1.

Irvine, though counsel, now petitions for a writ of habeas corpus, under 28 U.S.C. § 2554, raising three related claims which generally contend that he was denied his Sixth and Fourteenth Amendment rights to due process and a fair trial. ECF Doc. 1. Specifically, Irvine asserts three claims:

> **Ground One:** The trial court violated Irvine's constitutional rights when it permitted a lay witness to opine that text messages sent by one of the robbers identified Irvine as the recipient (ECF Doc. 1 at 6; ECF Doc. 1-2 at 3-4).
>
> **Ground Two:** The trial court violated Irvine's constitutional rights when it gave instructions on flight and consciousness of guilt when no evidence had been presented that Irvine fled the state (ECF Doc. 1 at 8; ECF Doc. 1-2 at 5-6).
>
> **Ground Three:** The trial court violated Irvine's constitutional rights when it permitted the state's DNA expert to testify that it was possible for someone to be present at a location and not leave behind any traces of their DNA (ECF Doc. 1 at 9; ECF Doc. 1-2 at 7-10).[2]

Because Irvine's claims are noncognizable, procedurally defaulted, and/or meritless, I recommend that the claims be DISMISSED and Irvine's petition for writ of habeas corpus be DENIED. I further recommend that Irvine not be granted a certificate of appealability.

## I.  State Court History

### A.  Trial Court Proceedings

A Summit County, Ohio, grand jury issued an indictment on November 28, 2016 and a supplemental indictment on September 29, 2017, which together charged Irvine with: (i) two counts of aggravated robbery; (ii) one count of aggravated burglary; (iii) two counts of kidnapping; and (iv) one count of having a weapon while under disability. ECF Doc. 4-1 at 4-5, 8-10. Irvine pleaded not guilty. ECF Doc. 4-1 at 6-7.

---

[2] Respondent Warden Michael Phillips filed a return of writ on November 20, 2020. ECF Doc. 4. On January 19, 2021, Irvine filed his traverse. ECF Doc. 6.

A jury trial was held on March 6, 2018.  ECF Doc. 4-2 at 298.  The facts established by the evidence, as determined by the Ohio Court of Appeals, are as follows:

{¶12} [T]he victims in this matter were two brothers who lived together at the time of the burglary.  The younger brother testified that, on the night of the burglary, a woman he had known for about ten years approached him and accepted his invitation to come home with him.  The two kept each other company into the early morning hours, but the woman, A.A., spent a significant amount of time texting on her phone.  Eventually, the two took a brief trip to the store.  Upon their return, A.A. "was dragging behind" the younger brother by about five feet as he entered the house.  Almost immediately thereafter, someone began pistol-whipping him.  The younger brother testified that A.A. helped tie him up and watched him while two men burglarized the house, threatened his life, and discussed whether they should kill his older brother as a result of the older brother having seen their faces.  Though the younger brother was in close proximity to the burglars at certain points, he admitted that he never had a good opportunity to see their faces.

{¶13} The older brother confirmed that he was at home when his younger brother arrived with A.A. and, later, when they left to go to the store.  He recalled being down in the basement when he heard an odd noise and walked upstairs to investigate.  He was then pistol-whipped by two men and bound with zip ties and duct tape.  When the police spoke with the older brother, he was unable to provide them with many details about the men he saw.  Nevertheless, he testified that he saw the men clearly.  When his brother showed him a large number of social media pictures in the hopes of identifying the burglars, the older brother was able to recognize one of the men.  He confirmed that he and his brother shared that picture with the lead detective.  The lead detective then showed him a different picture of the same man, and the older brother once again identified that man, Mr. Irvine, as one of the burglars.  Additionally, the older brother identified Mr. Irvine in the courtroom as one of the men who burglarized him.

{¶14} Carrie Sidoti, an administrative assistant with major crimes, also testified on behalf of the State.  It was common for Ms. Sidoti to retrieve, sort, and analyze cell phone records for the detectives in her unit.  She testified that she received a number of cell phone records in this matter, including (1) A.A.'s subscriber information; (2) the content of the text messages sent and received on her phone on the night of the burglary; and (3) the content of text messages exchanged between a 234 area code number … and Mr. Irvine's mother, the mother of his child, and another individual who identified himself as "G.B."  The State introduced the cell phone records at trial.

{¶15} A.A.'s subscriber information listed her as the owner of a certain Sprint cell phone account and set forth the cell phone number linked to that account. Her cell phone records showed that, between the hours of 12:00 a.m. and 4:45

a.m. on the morning in question, she exchanged more than 100 text messages with the 234 number.  Her text messages described her location at various points in time, the location of the brothers, and possible points of access to gain entry into their home.  Meanwhile, the individual corresponding with A.A. gave her instructions, asked questions about the brothers' activities, kept her informed as to when he planned to arrive, and notified her when he was inside the house.  Because the police were dispatched to the brothers' house at about 4:30 a.m. for a burglary in progress, the evidence was such that the foregoing text messages immediately preceded and coincided with the burglary.

{¶16} Ms. Sidoti testified that the Summit County Jail maintains a record of phone numbers provided by inmates and, while Mr. Irvine was incarcerated there, he provided the jail with phone numbers for his mother and the mother of his child.  The State produced cell phone records for both women, and those records showed that, near the time of the burglary, both women exchanged text messages with the 234 number that had exchanged messages with A.A.  Notably, the records showed that, at the same time the 234 number was corresponding with A.A., it also was corresponding with the mother of Mr. Irvine's child.  The latter correspondences included the following message, which was sent from the 234 number at 2:27 a.m.: "I don't hate u I hate how u act with me bt I dont hate u I love u [C]."  Meanwhile, the text messages between the 234 number and Mr. Irvine's mother pertained to Mr. Irvine's daughter and her schedule for the day.

{¶17} The last set of phone records the State produced were associated with an individual who referred to himself in the messages as "GB."  The messages between GB and the 234 number involved an exchange of pleasantries and plans to meet.  Twice during the exchanges, GB used the name "Von" in connection with the 234 number.  For instance, during a text message conversation that occurred on January 1st, the following exchange took place:

[GB]: Happy New Year fam

[The 234 number]: Whodis

[GB]: This von

[The 234 number]: Whodis

[GB]: GB

[The 234 number]: O wassup cuz

The individual using the 234 number never corrected GB when GB asked whether he was speaking with "Von."

ECF Doc. 4-1 at 145-48 (alterations in original).[3]

Sidoti also testified, over Irvine's objection, that the use of the name "Von" in the text messages seemed to identify Irvine as the recipient.  ECF Doc. 4-2 at 520.  During cross-examination, Sidoti testified that she was able to determine that Irvine was user of the 234 phone number only through the content of the text messages.  ECF Doc. 4-2 at 525-27, 530.  She testified that she had no independent, external evidence that indicated the 234 phone number belonged to Irvine or that the phone was in Irvine's possession before or during the offense period.  ECF Doc. 4-2 at 526, 531.

Lindsey Nelsen-Rausch, the state's expert in DNA forensic analysis, testified that she received samples taken from in and outside of the brothers' home, most of which lacked sufficient DNA with which to make a comparison.  ECF Doc. 4-2 at 418, 420, 426-36.  She testified, however, that: (i) Tucker's DNA profile was consistent with that of (a) blood samples from their kitchen floor and (b) zip ties and a glove recovered from their hallway; (ii) Tucker's and Oliver's DNA profiles were consistent with that of torn pieces of duct tape recovered at their house; and (iii) some of the duct tape samples contained the DNA of at least one unknown person.  ECF Doc. 4-2 at 427-29, 433, 435-37.  Nelsen-Rausch testified that she did not receive Irvine's DNA for comparison.  ECF Doc. 4-2 at 437-38.

During cross-examination, Nelsen-Rausch testified that all the DNA profiles that could be compared matched or were consistent with either Oliver or Tucker.  ECF Doc. 4-2 at 439.  She agreed with defense counsel that, based on her comparisons, "there was no DNA that would connect [Irvine] with this particular crime."  Id.  On redirect examination, Nelson-Rausch testified, over defense counsel's objection, that: "You could be in a location and not have left

---

[3] The state court's factual findings are presumed correct unless Irvine rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Moore v. Mitchell, 708 F.3d 760, 801 (6th Cir. 2013).

DNA behind on particular items." ECF Doc. 4-2 at 440.  She also testified it was possible for someone not to leave enough sufficient DNA behind for comparison.  *Id.*

Testimony was also presented that, at the time of the offense, Irvine had previously been convicted of improperly handling firearms in a motor vehicle, possession of cocaine, and felonious assault.  ECF Doc. 4-2 at 549-50.  Irvine was out on judicial release and probation, the conditions of which prohibited him from leaving the state of Ohio.  ECF Doc. 4-2 at 550-51. Despite the condition, he was in Texas at the time of his arrest.  ECF Doc. 4-2 at 550.

Following the close of the evidence, the court reviewed the jury instructions with the parties.  ECF Doc. 4-2 at 610-11.  Defense counsel objected only to the inclusion of a complicity instruction.  ECF Doc. 4-2 at 610-13, 704.  After closing argument, the court instructed the jury that:

> Testimony has been admitted indicating that the defendant fled the state of Ohio.  You are instructed that fleeing from the jurisdiction alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt.
>
> If you find the facts do not support the defendant fled the jurisdiction, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.
>
> However, if you find that the facts support that the defendant engaged in such conduct and if you decide the defendant was motivated by a consciousness of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crimes charged.  You alone will term what weight, if any, to give this evidence.

ECF Doc. 4-2 at 661-62.  The jury acquitted Irvine of having a weapon while under disability and convicted him of the remaining charges.  ECF Doc. 4-1 at 11; ECF Doc. 4-2 at 705-09.  At sentencing, the trial court merged the kidnapping charges with the aggravated robbery charges

and sentenced Irvine an aggregate 26-year prison sentence.  ECF Doc. 4-1 at 14-16; ECF Doc. 4-2 at 740, 742-44.

### B.    Direct Appeal

On April 10, 2018, Irvine timely appealed his convictions to the Ohio Court of Appeals. ECF Doc. 4-1 at 19.  Through new counsel, Irvine filed a merits brief, asserting nine assignments of error, three of which are relevant to the current petition:

1.  The trial court erred in admitting Sidoti's lay opinion testimony linking Irvine to the 234 phone number (ECF Doc. 4-1 at 29, 36-39).

3.  The trial court erred by allowing DNA expert testimony when the testimony was irrelevant (ECF Doc. 4-1 at 29, 41-42).

5.  The trial court erred by giving a consciousness-of-guilt instruction (ECF Doc. 4-1 at 48-49).

In support of his first assignment of error, Irvine argued that the trial judge abused her discretion when she allowed Sidoti to testify that Irvine was the operator of the cellphone bearing the 234 phone number because: (i) she was not an expert witness; (ii) she had no personal knowledge of whether Irvine possessed or used the cellphone; and (iii) the inference she drew was not rationally based on her own perception, but mere speculation.  ECF Doc. 4-1 at 38.  Irvine's argument supporting his first assignment of error exclusively relied on Ohio law.  *See* ECF Doc. 4-1 at 36-39, 127-30.

In support of his third assignment of error, Irvine argued that the trial court violated its gatekeeping function when it allowed Nelsen-Rausch to testify because she had no relevant testimony to offer in the absence of a DNA reference standard for Irvine.  ECF Doc. 4-1 at 42. In making his argument, Irvine primarily analogized the facts of his case to those of *State v. Sharier*, No. 14795, 1991 Ohio App. LEXIS 1893 (Ohio Ct. App. Apr. 24, 1991) (unreported). ECF Doc. 4-1 at 41-42.  He also cited Ohio caselaw discussing the requirements of *Daubert v.*

7

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), on the admissibility of expert

testimony.  ECF Doc. 4-1 at 41, 131-32 (citing *Terry v. Caputo*, 115 Ohio St.3d 351 (Ohio

2007)).

      In support of his fifth assignment of error, Irvine argued that it was plain error for the trial

court to instruct the jury on consciousness of guilt based on flight because there was no evidence

as to what his reasons were for being in Texas or that he knew of the crime investigation at the

time of his arrest.  ECF Doc. 4-1 at 48-49, 134-35.  In making his argument, Irvine cited state

and federal circuit law.  ECF Doc. 4-1 at 48-49. (citing, *inter alia*, *United States v. White*, 488

F.2d 660 (8th Cir. 1973); *Embree v. United States*, 320 F.2d 666 (9th Cir. 1963)).

      The state filed an appellee brief.  ECF Doc. 4-1 at 62-121.  On March 20, 2019, the Ohio

Court of Appeals overruled Irvine's assignments of errors as meritless and affirmed his

convictions.  ECF Doc. 4-1 at 142-70; *State v. Irvine*, 2019-Ohio-959 (Ohio Ct. App. 2019).  In

overruling Irvine's first assignment of error, the court reasoned:

> {¶25} Assuming without deciding that the trial court abused its discretion by
> allowing Ms. Sidoti to offer [her] testimony, Mr. Irvine has not shown that he
> suffered material prejudice as a result of its admission … The trial court admitted
> all of the cell phone records that served as the basis of Ms. Sidoti's testimony.
> Thus, the jurors could review the records themselves and form their own
> conclusions about the identity of the individual using the 234 number.  [T]he
> record evidenced exchanges between the 234 number, A.A.'s cell phone number,
> and the cell phone numbers belonging to Mr. Irvine's mother and the mother of
> his child.  The timing of several of those exchanges was significant, as they
> coincided with the burglary.  Moreover, the content of the exchanges was
> significant, as many aspects of that content supported the conclusion that the
> number belonged to Mr. Irvine.  Even disregarding Ms. Sidoti's conclusions, the
> text message records, in conjunction with the older brother's in-court and out-of-
> court identifications of Mr. Irvine, served as circumstantial evidence of Mr.
> Irvine's guilt.  Mr. Irvine has failed to show that, but for Ms. Sidoti's conclusions,
> the result in this matter would have been different.

ECF Doc. 4-1 at 152.  In overruling Irvine's third assignment of error, the Ohio Court of Appeals

reasoned:

{¶38} Here, the DNA testing that Ms. Nelsen-Rausch performed gave rise to a number of results, all of which she presented to the jury.  Those results included the fact that, on a swab taken from a torn piece of duct tape, she uncovered at least two DNA profiles, one of which was consistent with the younger brother and the other of which change from an unknown person.  At the very least, her testimony served to corroborate the brothers' testimony that they were restrained with duct tape during a burglary.  Accordingly, unlike the expert in *Sharier*, Ms. Nelsen-Rauch was able to offer forensic test results of at least arguable relevance ….

{¶39} To the extent Ms. Nelson-Rausch testified that it is possible for a person to be present at a location and not leave behind any traces of their DNA, forensic experts routinely testify that various factors can affect their ability to collect trace evidence … Ms. Nelson-Rausch was an expert in forensic DNA analysis and, based on her expertise, was able to offer a definitive conclusion in response to a hypothetical that the State posed (i.e., whether it was possible for a person to be present in a location without leaving behind traces of DNA) … That hypothetical did not directly pertain to Irvine, as the trial court never allowed the State to ask *Mr. Irvine* might have been at the scene without leaving behind his DNA … Ms. Nelson-Rausch readily admitted that she never tested Mr. Irvine's DNA.  Accordingly, she was unable to offer testimony that connected him directly to the crime scene.  Upon review, Mr. Irvine has not shown that Ms. Nelson-Rausch's testimony misled the jury.  Nor has he shown that the concerns identified by the *Sharier* Court were present in the instant matter.

{¶40} Even if this Court were to assume that the trial court ought to have excluded Ms. Nelson-Rausch's testimony, Mr. Irvine also has not explained how its admission prejudiced him … As noted, Ms. Nelson-Rausch never had Mr. Irvine's DNA, so her testimony never linked him to the crime scene.  Meanwhile, the older brother identified Mr. Irvine, both in-court and out-of-court, as one of the burglars.  The State also presented the jury with the cell phone records … all of which served as circumstantial evidence tending to implicate Mr. Irvine.  Mr. Irvine has not shown that, but for the admission of Mrs. Nelson-Rausch's testimony, the jury would not have convicted him.

ECF Doc. 4-1 at 157-59 (emphasis in original) (citations omitted).  And in overruling Irvine's third assignment of error, the Ohio Court of Appeals reasoned:

{¶44} The record reflects that Mr. Irvine did not object to [the consciousness of guilt instruction] when the court read them to the jury.  Although he objected to the State's request for a complicity instruction, his objection was based on the prosecutor's decision to wait until the close of the evidence to request the instruction.  He never objected to the language of the instruction.  Accordingly, Mr. Irvine forfeited his arguments regarding … the consciousness of guilt … instruction[].

9

{¶45} While a defendant who forfeits his objection to jury instructions still may assert a claim of plain error on appeal, Mr. Irvine has not done so.  This Court will not construct a claim of plain error on his behalf … Because Mr. Irvine forfeited his objections and has not set forth a claim of plain error on appeal, this Court rejects his arguments.

ECF Doc. 4-1 at 160 (citations and footnote omitted).  In a footnote, the court acknowledged that Irvine attempted to raise a plain error argument with respect to the consciousness of guilt instruction, but because he did so for the first time in his reply brief, the issue was not properly raised.  *Id.*

On May 6, 2019, Irvine filed a notice of appeal to the Ohio Supreme Court.  ECF Doc. 4-1 at 171-72.  He also filed a counseled memorandum in support of jurisdiction, in which he sought to raise five issues, three of which are relevant to the current petition:

2. The trial court abused its discretion by allowing a lay witness to opine about matters outside her rational perception or relevant experience (ECF Doc. 4-1 at 185-87).

4. The trial court erred by permitting the DNA expert to testify that absence of DNA evidence did not necessarily mean absence at the scene of the crime (ECF Doc. 4-1 at 188-89).

5. The trial court plainly erred when it instructed the jury on consciousness of guilt when there was no evidence of flight (ECF Doc. 4-1 at 189-91).

Irvine's arguments in support of these issues largely mirrored those in his briefs to the Ohio Court of Appeals.  ECF Doc. 4-1 at 185-91.  However, in support of his fourth proposition of law, he also more specifically argued that the admission of Nelson-Rausch's testimony violated *Daubert*.  ECF Doc. 4-1 at 189.  And in support of his fifth proposition of law, he additionally relied on *Alberty v. United States*, 162 U.S. 499 (1896), and *Hickory v. United States*, 160 U.S. 408 (1896).  ECF Doc. 4-1 at 190-91.

On June 26, 2019, the Ohio Supreme court declined to accept jurisdiction.  ECF Doc. 4-1 at 195.

## II.  Discussion

### A.  Ground One: Lay Opinion Testimony

In his Ground One claim, Irvine argues that his rights to due process and a fair trial were violated when the trial court allowed Sidoti to testify that the references to "Von" in the text messages conversations must have referred to Irvine because "Von" was part of Davon, Irvine's first name.  ECF Doc. 1-2 at 4.  Irvine asserted the admission of this evidence violated his rights because Sidoti's testimony was not helpful to the jury's understanding of the text messages and it usurped the role of the jury.  *Id.*

Warden Phillips responds that Irvine's Ground One claim is: (i) procedurally defaulted because (a) he raised it only in terms of whether the admission of Sidoti's testimony violated Ohio evidentiary law, (b) he cannot establish cause to excuse his default, and (c) he has not presented evidence of his actual innocence; and, alternatively, the claim is (ii) meritless because (a) Irvine has not pointed to a Supreme Court case finding that the admission of evidence like Sidoti's offends a fundamental principle of justice, (b) Irvine invited the error by eliciting testimony that tied him to the text messages, and (c) Irvine could not demonstrate prejudice. ECF Doc. 4 at 8-11, 15-16, 18-23.

In his traverse, Irvine asserts, without elaboration, that his Ground One claim *was* raised through the Ohio Supreme Court.  ECF Doc. 6 at 4-5.  He further argues that the admission of Sidoti's testimony rendered his trial fundamentally unfair because her testimony "cajoled" the jury in the direction her testimony suggested.  ECF Doc. 6 at 8.  He argues that he was

prejudiced because there was no other evidence linking him to the 234 number as the recipient of the text messages. ECF Doc. 6 at 8-9.

### 1.    Procedural Default

Procedural default is "a critical failure to comply with state procedural law," *Trest v. Cain*, 522 U.S. 87, 89 (1997), resulting in a bar to federal habeas review unless the petitioner has a sufficient basis for having the default excused, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when: (1) the state courts didn't review the petitioner's federal constitutional claim on the merit because he didn't comply with some state procedural rule; or (2) he failed to fairly present the claim *as a federal constitutional claim* to the state courts while state court remedies were still available. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default can be excused and will not preclude consideration of a claim on federal habeas review, however, if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

I agree with Warden Phillips that Irvine's Ground One claim is procedurally defaulted because Irvine did not fairly present it as a federal constitutional claim at each and every state of

Ohio's review process.  *Williams*, 460 F.3d at 806.  In his state court proceedings, Irvine only challenged the admission of Sidoti's testimony on the ground that it violated Ohio Evidence Rules 602, 701, and 703 and related Ohio caselaw.  ECF Doc. 4-1 at 36-39, 127-30, 185-87. Irvine never argued that his Sixth and Fourteenth Amendment rights were violated as a result. *See id.*  "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).  And any attempt by Irvine to now raise his Ground One claim in state court likely would be barred under Ohio's res judicata doctrine.  *State v. Cole*, 2 Ohio St. 3d 112, 113 (Ohio 1982).

Irvine has not attempted to assert that some external factor impeded his ability to raise his Ground One claim on direct appeal.[4]  *See Murray v. Carrier*, 477 U.S. 478, 487 (1986) ("[T]he existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule."); *see generally* ECF Doc. 1; ECF Doc, 1-2; ECF Doc. 6.  His inability to establish cause makes it unnecessary to consider whether he has shown prejudice.  *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) ("The cause-and-prejudice analysis is a conjunctive one, requiring a petitioner to satisfy both prongs to excuse a procedural default.").  And Irvine has not argued that he is actually innocent of the offense.  *See generally* ECF Doc. 1; ECF Doc, 1-2; ECF Doc. 6.

---

[4] Irvine argues in connection with his Ground Two claim that ineffective assistance of counsel can serve as cause to excuse a procedural default.  ECF Doc. 6 at 12.  Because Irvine is counseled, I do not construe that argument as relating to his Ground One claim, which he unambiguously asserts was exhausted all the way through the Ohio courts.  *Cf. McCormick v. Butler*, 977 F.3d 521, 528 (6th Cir. 2020).  Regardless, he cannot establish cause for failing to raise his challenge to the admission of Sidoti's testimony as a federal constitutional claim because of appellate counsel's deficient performance because the ineffective-assistance claim would itself be procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Thus, because no excuse applies, I recommend that Irvine's Ground One claim be DISMISSED as procedurally defaulted. *See also, e.g.*, *McSwain v. Buchanan*, No. 1:18cv2361, 2020 U.S. Dist. LEXIS 76006, at *44-50 (N.D. Ohio Mar. 31, 2020); *Gamble v. Tibbals*, No. 3:15-cv-233, 2015 U.S. Dist. LEXIS 126844, at *6-7 (S.D. Ohio Sept. 22, 2015); *Jamison v. Collins*, 100 F. Supp. 2d 521, 581 (S.D. Ohio 1998).

### 2. Merits

Even if Irvine's Ground One claim were not procedurally defaulted, I would nevertheless recommend that the claim be dismissed as meritless.

Generally, claims challenging state courts' evidentiary rulings are not cognizable in federal habeas review. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). Federal habeas relief based on a state court's evidentiary ruling is available only if "the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due process violation." *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011) (citing *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001)). "Nonetheless, courts have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Bugh v. Mitchell*, 329 F.3d 496, 512 (quotation marks omitted). This standard generally is only met if the evidentiary rulings "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (alterations and quotation marks omitted). And in the Sixth Circuit, a habeas petitioner typically must point to Supreme Court precedent holding that admission of the challenged evidence amounts to a due process violation. *Moreland*, 699 F.3d at 923; *Collier*, 149 F. App'x at 558.

Irvine has not met his burden of showing that the admission of Sidoti's testimony amounted to a due process violation. To make his Ground One claim, he relies on Federal Rules

14

of Evidence 701 and 702 and cites *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988).  ECF Doc. 1-2 at 3-4.  The Supreme Court in *Beech Aircraft Corp.* resolved a circuit split over the applicability of Federal Rule Evidence 803(8)(C) to conclusions and opinions in public investigatory reports containing factual findings.  488 U.S. at 156, 170.  The Court did not address whether the admission of lay opinion testimony violates due process.  Independent review also does not reveal a Supreme Court decision holding as much.  *See also, e.g.*, *Heyward v. Garvin*, No. 20-6098, 2021 U.S. Dist. LEXIS 89968, at *53-54 (E.D. Penn. May 11, 2021); *Haverly v. Clark*, No. 20-04935, 2020 U.S. Dist. LEXIS 255914, at *63 (C.D. Cal. Dec. 18, 2020); *Burnside v. Campbell*, No. 2:16-CV-13358, 2019 U.S. Dist. LEXIS 146288, at *21 (E.D. Mich. Aug. 28, 2019)  In the absence of Supreme Court authority, Irvine cannot establish that the admission of Sidoti's lay opinion testimony violated his due process rights.  *Collier*, 419 F. App'x at 558.

Moreover, there is nothing about the Ohio courts' disposition of Irvine's challenge to the admission of Sidoti's testimony that violated fundamental conceptions of justice.  As the Ohio Court of Appeals observed, even without Sidoti's opinion that references to "Von" in the text messages referred to Irvine, there was plenty of other evidence from which the jury could readily have reached the same conclusion.  This included: (i) cell phone records documenting the exchange of text messages between the 234 number, Amos, Irvine's mother, and the mother of Irvine's child; (ii) evidence that the 234 number was exchanging messages with Amos and the mother of Irvine's child at the same time, near the time of the robbery; (iii) the content of the 234 number's messages to the mother of Irvine's child, which discussed Irvine picking her up; and (iv) Oliver's out-of-court and in-court identification of Irvine as one of his assailants.  ECF Doc. 4-1 at 146-48; ECF Doc. 4-2 at 344-45, 348-50, 509-20.

Thus, Irvine's Ground One claim would fail on the merits even if it were not procedurally defaulted.  I recommend the Ground One claim be dismissed.

### B.        Ground Two: Jury Instruction

In his Ground Two claim, Irvine argues that his rights to due process and a fair trial were violated when the trial court instructed the jury on consciousness of guilt when there was no evidence to support it.  ECF Doc. 1-2 at 5-6.  He argues that the Supreme Court has viewed jury instructions on flight with great skepticism and has even found it reversible error to so instruct a jury.  ECF Doc. 1-2 at 6 (citing *Alberty* and *Hickory*).

Warden Phillips argues that Irvine's Ground Two claim is procedurally defaulted because he did not fairly present it to the Ohio Courts, because he raised his plain error argument for the first time in his reply brief.  ECF Doc. 4 at 12-13.  Warden Phillips further argues that Irvine's Ground Two claim is procedurally defaulted because the Ohio Court of Appeals enforced Ohio's contemporaneous-objection rule to preclude merits review of the claim.  ECF Doc. 4 at 14-16.  Alternatively, Warden Phillips argues that Irvine's Ground Two claim is not cognizable.  ECF Doc. 4 at 24.  Warden Phillips further argues that Irvine's Ground Two claim is meritless because there was evidence to support it and the instruction only required the jury to consider the location of his arrest as bearing on his guilt if they also found that consciousness of guilt motivated his flight.  ECF Doc. 4 at 25-27.

In his traverse, Irvine argues that his Ground Two claim is not procedurally defaulted because "Petitioner introduced an ineffective assistance of counsel claim."  ECF Doc. 6 at 11-13.  And he argues that the lack of evidence to support the instruction demonstrated a due process violation because there was no evidence of his intent to flee and no overwhelming evidence of guilt.  ECF Doc. 6 at 11-12.

### 1.     Cognizablity

Warden Phillips is correct that challenges to a state court's jury instructions are generally not cognizable in federal habeas proceedings. *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("[A] state court's interpretation of the propriety of a jury instruction under state law does not entitle a claimant to relief."). But such a claim would be cognizable if it asserts that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). That is precisely what Irvine's Ground One claim attempts to establish. *See* ECF Doc. 1-1 at 5-6; ECF Doc. 6 at 11-12 (citing *Cupp*). Therefore, I find that Irvine's Ground One claim should not be dismissed on cognizability grounds.

### 2.     Procedural Default

As stated above, there are two ways a habeas claim can be procedurally defaulted, including when the state courts didn't review the petitioner's claim because of a failure to comply with a state procedural rule. *Williams*, 460 F.3d at 806. This occurs when: (i) the petitioner failed to comply with an applicable state procedural rule; (ii) the state court actually enforced the rule; (iii) the rule constituted an "adequate and independent state ground" for denial which does not implicate federal law; and (iv) the petitioner cannot overcome his procedural default through cause and prejudice. *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001).

Although cognizable, Irvine's Ground Two claim is procedurally defaulted because the Ohio Court of Appeals applied a state procedural rule to preclude merits review of the claim.[5] *Williams*, 460 F.3d at 806; ECF Doc. 4-1 at 159-60. Under Ohio law, a failure to object to jury

---

[5] Because I find Irvine's Ground Two claim procedurally defaulted for failure to comply with a state procedural rule, I do not address Warden Phillips's alternative argument that Irvine's Ground Two claim was not fairly presented to the Ohio courts as a federal constitutional claim. *See* ECF Doc. 4 at 8, 10.

instructions forfeits appellate review of the jury instructions for all but plain error.  *Sate v. Bey*, 85 Ohio St. 3d 487, 497-98 (Ohio 1999).  Irvine did not object to the consciousness-of-guilt instruction at trial.  ECF Doc. 4-2 at 610-13, 704.  The Ohio Court of Appeals expressly enforced Ohio's contemporaneous-objection rule against Irvine.  ECF Doc. 4-1 at 159-60.  And the Sixth Circuit has held that Ohio's enforcement of the contemporaneous-objection rule is an adequate and independent state ground, even when the court reviews the claim for plain error.[6] *Wogenstahl v. Mitchell*, 668 F.3d 307, 336-37 (6th Cir. 2012); *see also Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006) ("[P]lain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue.").  Therefore, Irvine's Ground Two claim is procedurally defaulted.  *See Williams*, 460 F.3d at 806.

Irvine attempts to establish cause to excuse his procedural default because "Petitioner's ineffective assistance of counsel claim serves as 'cause' for Petitioner to not have followed the procedural rule."  ECF Doc. 6 at 12.  The procedural rule Irvine refers to in his traverse isn't trial counsel's failure to object but appellate counsel's failure to raise a plain-error argument in Irvine's initial Ohio Court of Appeals brief.  *Id.*  But whether appellate counsel raised a plain-error argument in his initial brief is irrelevant to the issue of procedural default.  As noted above, the claim would be procedurally defaulted even had the Ohio Court of Appeals reviewed the claim for plain error.  *See Keith*, 455 F.3d at 673.

---

[6] Irvine does not dispute that his Ground Two claim is procedurally defaulted in this way; he acknowledges the Sixth Circuit's application of procedural default when a state court reviews a claim for plain error.  ECF Doc. 6 at 2.  He argues instead that *other* circuits are divided on the same question.  Irvine is free to advocate for a change in Sixth Circuit precedent, but this court is bound to follow our circuit's precedent as it currently exists.  *Cochran v. Trans-General Life Ins. Co.*, 60 F. Supp. 2d 693, 698 (E.D. Mich. 1999) ("It is a well-settled rule that a district court is bound by the decisions of the circuit court of appeals in which it sits."); *Ghandi v. Police Dep't of Detroit*, 74 F.R.D. 115, 122 (E.D. Mich. 1977) ("[A] district court is not bound by the decision of a Court of Appeals for another circuit[.]").

Moreover, although Irvine asserts that he can establish cause by way of ineffective assistance of counsel, he has not developed the argument. ECF Doc. 6 at 11-12; *see also McPherson v. Kelsey*, 125 F. 3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited.]"); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) (applying the forfeiture principle in the habeas context). And even if Irvine had developed the argument, he could still not rely on it to establish cause because the ineffective-assistance claim would itself be procedurally defaulted, given that he did not raise an ineffective-assistance-of-counsel claim based on trial counsel's failure to object and any attempt to do so now would be barred by Ohio's res judicata rule. ECF Doc. 4-1 at 52-55, 136-37 (arguing instead that trial counsel was ineffective for stipulating to the admission of certain evidence, failing to request an instruction on identification, and failing to object to the victim's testimony of being high while on the stand); *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Cole*, 2 Ohio St. 3d at 113. Nor has Irvine raised an ineffective-assistance claim based on appellate counsel's performance, and any attempt to do so now would be untimely. Ohio App. R. 26(B)(1) (requiring that such application be filed within 90 days from the journalization of the appellate judgment unless the applicant shows good cause).

Irvine's inability to establish cause makes it unnecessary to consider whether he has shown prejudice. *Matthews*, 486 F.3d at 891. And Irvine has not raised an actual innocence argument in relation to his claim. *See generally* ECF Doc. 1; ECF Doc. 6.

I recommend that Irvine's Ground Two claim be DISMISSED as procedurally defaulted.

### 3.      Merits

Even if Irvine's Ground Two claim were not procedurally defaulted, I would recommend that the claim be dismissed as meritless.  The trial court's consciousness-of-guilt instruction instructed the jurors to make their own determination (i) on whether Irvine in fact fled Ohio; (ii) on his motives for doing so; and (iii) if he did flee out of consciousness of guilt, whether it was relevant to his guilt on the current charges.  ECF Doc. 4-2 at 661-62.  The Sixth Circuit has held such instructions "not so prejudicial as to render the entire trial fundamentally unfair." *Burton v. Renico*, 391 F.3d 764, 778 (6th Cir. 2004).  Moreover, Irvine has not identified any United States Supreme Court decision which he contends the Ohio courts' rulings were contrary to or an incorrect application of.  And he has not pointed to any factual determination of the Ohio courts that was unreasonable in light of the evidence presented in the state court proceedings.  He cannot, therefore, meet the basic requirement for habeas relief under 28 U.S.C. § 2254.  Thus, even if not procedurally defaulted, I would recommend that Irvine's Ground Two claim be dismissed as meritless.

### C.      Ground Three: DNA Testimony

In his Ground Three claim, Irvine argues that his rights to due process and a fair trial were violated when the trial court allowed Nelsen-Rausch to testify, when none of her testimony was relevant to the only material dispute of fact in the case – identity.  ECF Doc. 1-2 at 7-10. Irvine further argues that the Ohio Court of Appeals' decision was contrary to *Daubert*.  *Id.*

Warden Phillips responds that Irvine's Ground Three claim is procedurally defaulted because Irvine did not raise the claims as a violation of his federal constitutional rights, despite his citation to *Daubert*.  ECF Doc. 4 at 8-10.  Alternatively, Warden Phillips argues that Irvine's Ground Three claim is meritless because any error in the Ohio Court of Appeals' application of

20

state evidentiary law is not cognizable on federal habeas review.  ECF Doc. 4 at 30.  And Warden Phillips argues that any error did not amount to a fundamental miscarriage of justice. ECF Doc. 4 at 30-333.

In his traverse, Irvine argues that he fairly presented his Ground Three claim because "the state evidentiary issues in question were primarily decided by federal law" and "the state courts decisions relied on in trial were based on a federal analysis." ECF Doc. 6 at 16.  Irvine argues that the admission of Nelsen-Rausch's testimony amounted to a fundamental miscarriage of justice because she testified outside of her scientific testing and misled the jury into questioning the absence of DNA at the crime scene. ECF Doc. 6 at 17.

### 1. Cognizabitliy

Irvine's Ground Three claim is cognizable, but only in part.  Irvine's Ground Three claim has two subclaims: (i) the admission of Nelsen-Rausch's testimony violated Irvine's rights to due process and a fair trial; and (ii) the Ohio Court of Appeals' rejection of his challenge to the admission of her testimony was contrary to or an unreasonable application of *Daubert*.  Although evidentiary rulings are generally noncongizable, the first claim *is* cognizable.  *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) ("A federal court may . . . grant relief in cases where the state court's evidentiary ruling is so fundamentally unfair that it rises to a due-process violation." (quotation marks omitted)).

Irvine's second subclaim, however, is not cognizable.  The Supreme Court in *Daubert* determined the criteria for admissibility of expert testimony under the Federal Rules of Evidence. *See* 509 U.S. at 585-95; *see also Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to appellant's [state court] conviction.").  The Federal Rules of Evidence do not apply to the states.  The Supreme Court's

decisions interpreting the Federal Rules of Evidence likewise aren't binding on how the states interpret their own rules of evidence. Because *Daubert* is not a decision of federal constitutional law, a state court's failure to meet the *Daubert* standard for admissibility of expert testimony does not provide a basis for federal habeas relief. *E.g.*, *Primaeu v. Kelly*, No. 1:14CV02231, 2018 U.S. Dist. LEXIS 221378, at *37 (N.D. Ohio Nov. 20, 2018); *White v. Hooks*, No. 3:17-cv-111, 2017 U.S. LEXIS 186863, at *4 (S.D. Ohio Nov. 13, 2017); *Farraj v. Wolfenbarger*, No. 10-13627, 2014 U.S. Dist. LEXIS 39015, at *27 (E.D. Mich. Mar. 18, 2014).

I therefore recommend that Irvine's Ground One claim be DISMISSED IN PART as noncognizable.

### 2.    Procedural Default

The remainder of Irvine's Ground Three claim is procedurally defaulted because it was not fairly presented as a federal constitutional claim in the Ohio courts. *Williams*, 460 F.3d at 806. In his briefs to the Ohio Court of Appeals and memorandum in support of jurisdiction to the Ohio Supreme Court, Irvine did not argue that the admission of Nelsen-Rausch's testimony violated his federal constitutional rights. *See* ECF Doc. 4-1 at 41-42, 131-32, 188-89. He argued instead that the trial court abdicated its gatekeeping function by allowing her to testify when her testimony was not relevant to any material issue. *See id.* The gatekeeping function in question was articulated in *Daubert* in relation to the Federal Rules of Evidence, which the Ohio courts have incorporated into the Ohio Rules of Evidence. *Miller v. Bike Athletic Co.*, 80 Ohio St. 3d 607, 611 (Ohio 1998); *see also Caputo*, 115 Ohio St. 3d at 357. But as discussed above, *Daubert* is not a decision on federal constitutional law. It did not address whether the admission of evidence violates a habeas petitioner's rights under the Constitution. *See Duncan*, 513 U.S. at 366. Irvine cannot now return to state court to raise his due process challenge because it would

be barred by Ohio's res judicata rule.  *Cole*, 2 Ohio St. 3d at 113.  Because Irvine raised his Ground Three claim only in terms of whether the trial court erred in its application of Ohio's evidentiary rules, Irvine's Ground Three claim is procedurally defaulted.

Irvine has not attempted to establish cause for not raising his due process challenge in his state court proceedings.  *See generally* ECF Doc. 1; ECF Doc. 6.  Failure to establish cause makes it unnecessary to consider prejudice.  *Matthews*, 486 F.3d at 891.  And he has not argued actual innocence in connection with this claim.

I therefore recommend that Irvine's Ground Three claim be DISMISSED as procedurally defaulted.  *See also, e.g.*, *McSwain*, No. 1:18cv2361, 2020 U.S. Dist. LEXIS 76006, at *44-50; *Gamble*, No. 3:15-cv-233, 2015 U.S. Dist. LEXIS 126844, at *6-7; *Jamison*, 100 F. Supp. 2d at 581.

### 3.   Merits

Even if Irvine's Ground Three claim were not procedurally defaulted, I would recommend that it be dismissed as meritless.

As noted above, federal habeas relief based on a state court's evidentiary ruling is available only if the state court's evidentiary ruling was fundamentally unfair, which generally requires that the petitioner point to a Supreme Court case holding the admission of the challenged evidence to be a due process violation.  *See Moreland*, 699 F.3d at 923; *Collier*, 149 F. App'x at 558.  Irvine has not pointed to a Supreme Court case holding that the admission of expert testimony that is not relevant to a material issue is a due process violation.  And as discussed above, he cannot meet his burden by relying on *Daubert*.

Moreover, there is nothing about the Ohio courts' disposition of Irvine's claim that Nelson-Rausch's testimony was improperly admitted that violated fundamental conceptions of

23

justice.  As the Ohio Court of Appeals determined, Nelson-Rausch's testimony never linked Irvine to the crime scene and there was other evidence from which the jury could find that Irvine was at the scene.  ECF Doc. 4-1 at 158.  Such evidence includes: (i) cell phone records documenting the exchange of text messages between the 234 number, Amos, Irvine's mother, and the mother of Irvine's child; (ii) evidence that the 234 number was exchanging messages with Amos and the mother of Irvine's child at the same time, near the time of the robbery; (iii) the content of the 234 number's messages to the mother of Irvine's child, which discussed Irvine picking her up; and (iv) Oliver's out-of-court and in-court identification testimony.  ECF Doc. 4-1 at 146-48; ECF Doc. 4-2 at 344-45, 348-50, 509-20.  Moreover, Irvine has not – because he cannot – identified any Supreme Court case about which he contends that the Ohio courts' rulings were contrary to or an unreasonable application of.  And he has not identified any factual determination that was unreasonable given the record before the court.  Thus, even if Irvine's Ground Three claim were not procedurally defaulted, I would recommend that it be dismissed as meritless.

## III.  Certificate of Appealability

### A.  Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253 (c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the COA issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

## B. Analysis

If the Court accepts my recommendations, Irvine will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Irvine's Ground One and Ground Two claims are procedurally defaulted and meritless.  And his Ground Three claim is procedurally defaulted, noncognizable, and meritless.  Because jurists of reason would not find debatable that relief is not available for any of the claims raised in Irvine's petition, I recommend that no certificate of appealability issue in this case.

## IV.     Recommendation

Because Irvine's claims are procedurally defaulted, noncognizable, and/or meritless I recommend that Irvine's claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Irvine not be granted a COA.

Dated: April 25, 2022

Thomas M. Parker
United States Magistrate Judge

_____

## OBJECTIONS

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed *de novo* by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).